FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.
★ OCT 17 2018 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X

TRAMELL THOMPSON,

                Plaintiff,

- against -

JOHN LANDERS, WILLIAM RIVERA, and
MTA NEW YORK CITY TRANSIT,

                Defendants.

------------------------------------------------------------------ X

**MEMORANDUM DECISION AND ORDER**

17-CV-5857 (AMD) (RLM)

ANN M. DONNELLY, United States District Judge:

The plaintiff, Tramell Thompson, brings this action against MTA New York City Transit, and MTA employees John Landers and William Rivera,[1] alleging violations of Title VII of the Civil Rights Act of 1964, New York State Human Rights Law § 296, and New York City Human Rights Law § 8-107, as well as defamation and libel. On April 26, 2018, the plaintiff filed an amended complaint to address deficiencies the defendants identified in their pre-motion letters to the Court. (ECF No. 22.) The defendants move to dismiss the amended complaint in its entirety. (ECF Nos. 24, 25.) For the reasons that follow, I dismiss the plaintiff's Title VII claims and decline to exercise supplemental jurisdiction over the remaining claims.

### BACKGROUND*

The plaintiff started working for the MTA on September 29, 2013, and became a conductor sometime before 2016. (ECF No. 22 ¶¶ 9, 12.) In February of 2016, the plaintiff

---

[1] The plaintiff does not state whether Landers and Rivera are supervisors or co-workers. (*See* ECF No. 22 ¶¶ 7, 8.)

*All facts are taken from the amended complaint and its attached exhibits. (ECF No. 22.)

1

became a shop steward for his Union, TWU-Local 100, and "became vocal in his opposition to a contract between his Union" and the MTA. (ECF No. 22 ¶¶ 10–11.) The plaintiff continued to express his opinion that the Union and the MTA were "working together to the detriment of black employees." (*Id.* ¶ 13.) In November of 2016, he posted a photograph of himself wearing a sweatshirt that said "Gentrify My Paycheck" on Facebook. (*Id.*)

After the plaintiff announced on a radio show that he would not strike with the Union because he felt that "the negotiation process was unfair" (*id.* ¶ 14), his fellow employees sent him insulting messages on Facebook. On December 17, 2016, John Landers, a white MTA employee, told the plaintiff, by way of a private Facebook message, that his "ilk has no chance of winning EVER" and not to "shoot [him]self in the foot so early in [his] career." (*Id.* ¶ 16; ECF No. 22-2.) Landers also sent an image of black men in "hip-hop" outfits with the caption "We be like f[\*\*\*]in those MTA crackers up if we don't get ours." (ECF No. 22 ¶ 15; ECF No. 22-2.) He also sent a poster that labeled the plaintiff a "scab," and someone who "betrayed his Master." (ECF No. 22 ¶ 17.)[2] On December 30, 2016, William Rivera, another MTA employee, posted a picture of the plaintiff with the caption, "Beware of this Sexual Predator." (*Id.* ¶ 18; ECF No. 22-3.) The plaintiff replied on Facebook that Rivera could not "even garner solidarity within [his] own union." (ECF No. 22-4.) Rivera responded by calling the plaintiff a "Tranny," who was "too new in this business to even know what [he was] talking about." (ECF No. 22 ¶ 19; ECF No. 22-4.) The plaintiff claims that both Landers and Rivera made flyers out of these offensive images and comments and distributed them at work. (ECF No. 22 ¶¶ 15–20.)

On January 7, 2017, the plaintiff reported Landers' and Rivera's conduct to the MTA. (*Id.* ¶ 20.) He filed a second complaint ten days later. (*Id.* ¶ 21.) On January 27, 2017, the MTA

---

[2] The defendant MTA replicated the message in its reply brief, and points out that it does not include the "betrayed his Master" language that the plaintiff alleges. (ECF No. 33 at 4.)

informed the plaintiff that it was not going to "open an investigation into this matter" because it involved "off-duty, off-premises conduct on social media," which "fall[s] outside of the [MTA's] purview." (ECF No. 22-5.)

On January 29, 2017, the plaintiff requested that the Equal Employment Opportunity Commission ("EEOC") bring discrimination charges against the defendants. (ECF No. 22 ¶ 24.) On September 19, 2017,[3] the EEOC issued the plaintiff a right-to-sue letter (ECF No. 22 ¶ 25; ECF No. 22-6), and on October 6, 2017, the plaintiff brought this action, claiming, among other things, that the defendants engaged in racial discrimination, sexual harassment, and created a hostile work environment in violation of Title VII and New York state and city laws. (ECF No. 1.) On April 26, 2018, the plaintiff filed an amended complaint (ECF No. 22), which the defendants now move to dismiss. (ECF Nos. 24, 25.)

## DISCUSSION

To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007). This means that it must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Twombly,* 550 U.S. at 556). While it does not require "detailed factual allegations," this standard requires more than "a formulaic recitation of the elements of a cause of action" and more than an "unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal,* 556 U.S. at 678 (citing *Twombly,* 550 U.S. at 555). In deciding a Rule 12(b)(6) motion to dismiss, the Court "must accept as true all of the allegations contained in the complaint;" however, this tenet does not apply to legal conclusions. *Iqbal,* 556 U.S. at 678 (internal citations

---

[3] The amended complaint alleges that the letter was issued on September 19, 2017 (ECF No. 22 ¶ 25), but the attached letter is dated August 31, 2017 (ECF No. 22-6).

3

omitted).

## I. Title VII Claims

Title VII makes it unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment" because of the individual's "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). Under Title VII, a plaintiff may assert claims of "direct discrimination (the so-called 'quid pro quo' variety), . . . and 'hostile workplace environment' harassment." *Leibovitz v. New York City Transit Auth.*, 252 F.3d 179, 188 (2d Cir. 2001) (citing *Carrero v. New York City Housing Auth.*, 890 F.2d 569, 577 (2d Cir. 1989)); *Deberry v. Hosp.*, No. 12–CV–6251, 2016 WL 3840673, at *5 (E.D.N.Y. July 12, 2016), *aff'd sub nom. DeBerry v. Brookdale Hosp. Med. Ctr.*, 699 F. App'x 72 (2d Cir. 2017). The plaintiff alleges that Landers' and Rivera's conduct constituted race and gender discrimination and created a hostile work environment, which the MTA condoned by refusing to fire or reprimand them. (ECF No. 22 ¶¶ 27–35.) These claims do not survive the defendants' motions to dismiss.

As an initial matter, individuals cannot be held liable under Title VII, so the claims against defendants Landers and Rivera must be dismissed. *Guerra v. Jones*, 421 F. App'x 15, 17 (2d Cir. 2011) (Title VII does not "subject[] individuals, even those with supervisory liability over the plaintiff, to personal liability.") (citing *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1313 (2d Cir. 1995)); *Patterson v. County of Oneida, N.Y.*, 375 F.3d 206, 221 (2d Cir. 2004) ("[W]e note that individuals are not subject to liability under Title VII.") (citation and internal quotation marks omitted); *Figueroa v. RSquared NY, Inc.*, 89 F. Supp. 3d 484, 492 (E.D.N.Y. 2015) ("Individual defendants may not be held personally liable for alleged violations of Title VII.") (citations omitted).

4

Nor has the plaintiff stated a discrimination claim against the MTA. To establish a prima facie case of discrimination under Title VII, a plaintiff must show that "(1) he is a member of a protected class; (2) he was qualified for the position he held; (3) he suffered an adverse employment action; and (4) the adverse action took place under circumstances giving rise to an inference of discrimination." *Ruiz v. Cnty. of Rockland*, 609 F.3d 486, 492 (2d Cir. 2010) (citation omitted); *see Deberry*, 2016 WL 3840673, at *5.[4] The plaintiff does not claim that he suffered any adverse employment action, much less an adverse employment action that was motivated by racial or gender discrimination; therefore, his direct discrimination claims are dismissed.[5] *MacDonnell v. Liberty Cent. Sch. Dist.*, 115 F. App'x 489, 491 (2d Cir. 2004) (affirming dismissal of Title VII claim because "[the plaintiff] fail[ed] to state a prima facie case as she d[id] not allege an adverse employment action"); *Jaeger v. N. Babylon Union Free Sch. Dist.*, 191 F. Supp. 3d 215, 229 (E.D.N.Y. 2016) (Court dismissed discrimination claim where "the complaint fail[ed] to state facts to make it plausible that Jaeger suffered an adverse employment action."); *Argeropoulos v. Exide Techs.*, No. 08–CV–3760, 2009 WL 2132443, at *4 (E.D.N.Y. July 8, 2009) (same).

The plaintiff's hostile work environment claim is similarly flawed. "[I]t is 'axiomatic' that in order to establish a . . . hostile work environment under Title VII, a plaintiff must demonstrate that the conduct occurred because of [his]" protected status. *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002) (quoting *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001)).

---

[4] "[A] Title VII plaintiff need not allege specific facts establishing each element of a prima facie case of discrimination;" however he must allege that "the employer took adverse action against him and . . . his race, color, religion, sex, or national origin was a motivating factor in the employment decision." *Pothen v. Stony Brook Univ.*, 211 F. Supp. 3d 486, 493 (E.D.N.Y. 2016) (citing *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84, 86 (2d Cir. 2015)) (internal quotation marks omitted).

[5] The plaintiff's claim that the MTA engaged in racial discrimination by refusing to punish Landers and Rivera and that it has punished African–American employees for similar behavior is entirely speculative. (*See* ECF No. 22 ¶ 23.)

Further, "a plaintiff must show that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Littlejohn v. City of NY*, 795 F.3d 297, 320–21 (2d Cir. 2015) (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). A court considering whether a work environment is hostile should consider the totality of the circumstances, including "(1) the frequency of the conduct, (2) the severity of the conduct, (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance, and (4) whether the conduct unreasonably interferes with the employee's work performance." *Brennan v. Metro. Opera Ass'n*, 192 F.3d 310, 319 (2d Cir. 1999) (citing *Harris*, 510 U.S. at 23).

While the messages that Landers and Rivera sent were tasteless and offensive, the plaintiff has not established that the defendants harassed him because of his race or gender. Rather, it is clear from the complaint that Landers and Rivera were responding to the plaintiff's criticism of the Union. Neither Landers nor Rivera said anything to the plaintiff until he announced that he would not strike with the Union. (ECF No. 22 ¶¶ 14–19.) Landers' messages referenced the plaintiff's career and other MTA employees. (ECF No. 22-2.) Rivera's remarks were in response to the plaintiff's taunt that Rivera could not "even garner solidarity within [his] own union." (ECF No. 22-4.)

Moreover, the plaintiff does not allege that Rivera used the terms "sex offender" and "Tranny"[6] because of the plaintiff's gender. Instead, Rivera leveled these insults to embarrass and insult the plaintiff—apparently because of their disagreement about the Union. *See Dingle v. Bimbo Bakeries*, No. 11–CV–2879, 2012 WL 2872161, at *4, n.1 (E.D.N.Y. July 12, 2012) (Co-workers' portrayal of the plaintiff as a "pervert and a homosexual" did not "suggest gender-

---

[6] The plaintiff does not claim that Rivera used this term to target the plaintiff's sexual orientation or gender identity.

based animus towards men in the workplace."); *Borski v. Staten Island Rapid Transit*, No. 04–CV–3614, 2006 WL 3681142, at *3 (E.D.N.Y. Dec. 11, 2006) (Court dismissed gender–based discrimination claim where a supervisor and co–workers posted cartoons of the plaintiff in sexual situations and cross-dressing because these acts demonstrated "personal animus against Mr. Borski . . . and not gender-based animus against men."). Rivera's comments do not constitute sex–based discrimination merely because they include sexual content. *Dingle*, 2012 WL 2872161, at *4 ("The fact that the harassment suffered by the plaintiff was sexual in nature . . . does not make it gender-based discrimination.") (citation omitted); *see Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998) ("We have never held that workplace harassment . . . is automatically discrimination because of sex merely because the words used have sexual content or connotations.").

Even if the plaintiff had sufficiently alleged race– or gender–based animus, the incidents were not "severe" or "pervasive" enough to create a hostile work environment. Defendants Landers and Rivera allegedly distributed the flyers[7] on three separate occasions—December 17, December 30, and an unspecified date—over the span of one month. (ECF No. 22 ¶¶ 15–19.) These isolated acts over a short period of time were not pervasive and do not establish a hostile work environment. *See Mormol v. Costco Wholesale Corp.*, 364 F.3d 54, 58 (2d Cir. 2004) (holding that three incidents of sexual harassment over a one-month period "were few and occurred over a short span of time" and "far from being pervasive"); *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 69 (2d Cir. 2000) ("Incidents that are few in number and that occur over a short period of time may fail to demonstrate a hostile work environment.")

---

[7] The MTA argues that the offending Facebook messages and pictures were never distributed at the plaintiff's workplace, and therefore, the MTA cannot be held liable for co–worker disputes that occurred offsite. (ECF No. 30 at 7–9.) Because at the motion to dismiss stage, the Court "must accept as true all of the allegations contained in the complaint," *Iqbal*, 556 U.S. at 678, I do not address this argument.

(citations and internal quotation marks omitted). Moreover, the plaintiff does not specify how or when the posters were distributed, what information they contained, or the effect—if any—they had on the plaintiff's ability to work. Without more, distributing the flyers in the plaintiff's workplace does not amount to a hostile work environment. *See Caver v. City of Trenton*, 420 F.3d 243, 263 (3d Cir. 2005) ("[I]nappropriate racist comments, graffiti, and flyers . . . was insufficient . . . to establish a hostile work environment."). The few incidents in a one-month period did not "alter the conditions of the victim's employment," and thus fall short of the requisite severity and pervasiveness under Title VII. *Littlejohn*, 795 F.3d at 320–21.

The conduct about which the plaintiff complains stemmed from personal conflict and union disputes, not discrimination. While "Title VII prohibits discrimination, . . . it is not a shield against harsh treatment at the work place." *Stepheny v. Brooklyn Hebrew Sch. for Special Children*, 356 F. Supp. 2d 248, 262 (E.D.N.Y. 2005) ("The plaintiff cannot turn a personal feud into a sex discrimination case.") (citations and internal quotation marks omitted); *see Oncale*, 523 U.S. at 80 ("Title VII does not prohibit all verbal or physical harassment in the workplace; it is directed only at 'discriminat[ion] . . . because of . . . race [or] . . . sex.'"). Accordingly, the plaintiff's Title VII claims are dismissed.[8]

## II. Remaining State Law Claims

"Where a court dismisses all claims over which it has original jurisdiction, it may, in its discretion, decline to exercise supplemental jurisdiction over remaining claims." *Wolfinger v. Consolidated Edison Co. of New York, Inc.*, No. 17–CV–1710, 2018 WL 3637964, at *12 (E.D.N.Y. July 31, 2018) (citing 42 U.S.C. § 1367(c)(3)). In deciding whether to exercise

---

[8] The defendants also argue, relying on extrinsic documents, that the Title VII claims should be dismissed because the plaintiff has not exhausted his EEOC remedies (ECF No. 30 at 6–7) and his EEOC right-to-sue letter did not name the individual defendants (ECF No. 24-5 at 6–8). Because the Title VII claims are dismissed on other grounds, I do not reach these arguments.

supplemental jurisdiction, district courts should balance the values of judicial economy, convenience, fairness, and comity. *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 343 (1988); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law."); *Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 123 (2d Cir. 2006) ("[F]ederal policy concerns may argue in favor of exercising supplemental jurisdiction even after all original–jurisdiction claims have been dismissed."). Because the federal claims have been dismissed, I decline to exercise supplemental jurisdiction over remaining state claims. *Klein & Co. Futures. Inc. v. Bd, of Trade*, 464 F.3d 255, 262 (2d Cir. 2006) ("[W]here, as here, the federal claims are eliminated in the early stages of litigation, courts should generally decline to exercise pendent jurisdiction over remaining state law claims.").

## CONCLUSION

For the reasons above, I dismiss the plaintiff's Title VII claims, and decline to exercise jurisdiction over the plaintiff's remaining state law claims.

**SO ORDERED.**

s/Ann M. Donnelly

Ann M. Donnelly
United States District Judge

Dated: Brooklyn, New York
October 17, 2018